TODD M. LANDER (BAR NO. 173031)
todd.lander@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for PMC BANCORP, f/k/a
PROFESSIONAL MORTGAGE CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PMC BANCORP, f/k/a PROFESSIONAL MORTGAGE CORP. and PMAC LENDING SERVICES, INC., <br><br> Defendants. | Case No. CV15-04867 JAK (PJWx) <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> Judge:  Hon. John A. Kronstadt <br> Date:   January 25, 2016 <br> Time:   8:30 a.m. <br> Ctrm:   750 <br>       255 East Temple Street <br>       Los Angeles, CA 90012-3332 <br><br> **The Hon. John A. Kronstadt** <br> **Honorable Patrick J. Walsh** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD;

PLEASE TAKE NOTICE that at 8:30 a.m. on January 25, 2016 or as soon thereafter as the matter may be heard in Courtroom 750 of the above entitled Court located at 255 East Temple Street, Los Angeles, California, Defendant PMC BANCORP, f/k/a PROFESSIONAL MORTGAGE CORP. ("PMC") will and hereby does move the Court for an order dismissing the Complaint of Plaintiff LEHMAN BROTHERS HOLDINGS, INC., ("Plaintiff") against Bancorp, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion, the accompanying Request for Judicial Notice, the attached Points and Authorities, and upon such other and further

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  argument and evidence as the Court may receive at the time of hearing.  In

2  accordance with Local Rule 7-3, the parties met and conferred concerning the

3  subject matter of this Motion on September 23, 2015 – as part of a Mediation in Los

4  Angeles.

5

6  DATED: October 9, 2015                 FREEMAN, FREEMAN & SMILEY, LLP

7

8

9  By: _____ /s/ Todd M. Lander _____

10                                         TODD M. LANDER
                                          Attorneys for PMC BANCORP, f/k/a
11                                         PROFESSIONAL MORTGAGA CORP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................. 2

    A.    The Lehman Sale And First Lawsuit ........................................ 2

    B.    The PMAC Transaction .............................................................. 4

    C.    Lehman Pursues A Second Lawsuit ......................................... 6

III.  THE STANDARDS FOR RULE 12(B)(6) ............................................ 8

IV.   ARGUMENT ........................................................................................... 9

    A.    This Lawsuit Is Barres As *Res Judicata* Between Lehman And Bancorp ...................................................................................... 10

    B.    The Indemnity Claim Is Barred By The Statute Of Limitations .......... 13

    C.    The Lawsuit Is Also Barred By Laches ................................... 14

V.    CONCLUSION ..................................................................................... 15

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

2759980.1 24312-200

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................9

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 127 S. Ct. 1955, (2007) ................................................9

*Boeken v. Philip Morris USA, Inc.*
   48 Cal.4th 788, 108 Cal.Rptr.3d 806 P.3d 342 (2010) ....................12

*Crowley v. Katleman*
   8 Cal.4th 666, 34 Cal.Rptr.2d 386 P.2d 1083 (1994) ......................11

*Eichman v. Fotomat Corp.*
   147 Cal.App.3d 1170, 197 Cal.Rptr. 612  (1983) ............................12

*Ely-Cruikshank Co. v. Bank of Montreal*
   615 N.E.2d 985 (N.Y. 1993) .............................................................13

*Global Fin. Corp. v. Triarc Corp.,*
   715 N.E.2d 482 (N.Y. 1999) .............................................................13

*Gonzales v. California Dep't of Corr.*
   739 F.3d 1226 (9th Cir. 2014)...........................................................12

*Kleinclaus v. Dutard*
   147 Cal. 245(1905) ............................................................................14

*Lopez v. Professional Collection Consultants*
   2011 WL 4964886, at * 2 (C.D. Cal. 2011) ......................................9

*Owl Drug Co. v. Bryant*
   115 Cal.App.2d 296 (1953)................................................................10

*Oxbow Calcining USA Inc. v. American Indus. Partners*
   948 N.Y.S.2d 24 (N.Y. App. Div. 2012) ..........................................14

*Trujillo v. Santa Clara County*
   775 F.2d 1359 (9th Cir. 1985)...........................................................12

*Wolfjen v. Dolten*
   24 Cal.2d 891 (1944)..........................................................................11

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**STATUTES**

C.J.S., Judgments, § 657 ........................................................... 10

C.J.S., Judgments, § 661 ........................................................... 10

**OTHER AUTHORITIES**

N.Y. CPLR LAW § 213(2) ......................................................... 13

**RULES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................ 1

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# I.     <u>INTRODUCTION</u>

This action has been pending for years, and this iteration of it constitutes an impermissible attempt to re-litigate claims already reduced to judgment two years ago, in violation of California's public policy prohibiting the splitting of causes of action.  In September 2010, Plaintiff Lehman Brother Holdings, Inc. ("Lehman") filed a breach of contract and indemnity claim against PMC BanCorp ("BanCorp"), stemming from BanCorp's sale of loan servicing rights to Aurora Savings Bank (a wholly owned subsidiary of Lehman) which in turn sold them to Lehman Brothers Bank – Lehman's predecessor.  These sales started in late 2004 and ended in late 2007 pursuant to a Loan Purchase Agreement between Lehman and BanCorp. Lehman alleged that the transacted loans contained certain "defects", in breach of representations and warranties BanCorp made as part of the loan agreements.  That action resulted in Lehman obtaining judgment against BanCorp in 2013.

That part is simple.  Lehman has a judgment, which it wants to enforce.  And it is entitled to pursue enforcement efforts.  What it can't do is re-litigate the same rights that were the subject of the prior lawsuit between these parties.  But that, alas, is precisely what Lehman intends by way of this case.  Its single claim for contractual indemnity against BanCorp derives from and is based on the same alleged breaches, of the same loan sales agreements, that formed the basis of Lehman's September 2010 lawsuit.  In short, Lehman has re-filed essentially the same lawsuit for the same purported breaches of the same contracts that are the subject of the existing judgment.  The law of claim splitting and *res judicata* prohibit this form of duplicative litigation.

That alone demands dismissal of the case against Bancorp.  Beyond that, however, Lehman's indemnity claim is barred by the statute of limitation and the doctrine of laches.  Thus, for all these reasons, this Motion should be granted and the Complaint dismissed, with prejudice.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## II.  FACTUAL BACKGROUND

### A.  The Lehman Sale And First Lawsuit

The basic facts of this dispute are not in reasonable dispute.  BanCorp admittedly sold, and Lehman clearly acquired, a series of mortgage loan servicing rights between *2004 and terminating in late 2007*.  BanCorp does not dispute that, as part of the transfer of loans, it made certain representations and warranties concerning the loans themselves.  The Loan Purchase Agreement between Aurora Bank and BanCorp and Lehman and BanCorp  (the "LPAs") provided, among other things, that BanCorp vowed that: (1) the information provided to Lehman, concerning the loans, was not falsified; (2) BanCorp complied with all applicable laws and regulations concerning the origination, closing, underwriting, processing and servicing of the subject loans; (3) all statements made, and agreements provided, for loan underwriting were not falsified and contain no untrue statements; (4) no default breach exists under the mortgages being sold; (4) the loans were originated in accordance with the "Seller's Guide"; and (5) the mortgaged properties were lawfully occupied.

BanCorp does not contest these representations and warranties.  They are found within the LPA.  BanCorp executed with Lehman.  The problem is that Lehman filed litigation over the purported breach of those contractual representations and warranties in 2010, and took that litigation to summary judgment in February 2013.  But now, more than three years later, Lehman has filed the present *lawsuit seeking to vindicate the very rights it enforced in 2010.*  It has, in other words, split its cause of action, precluding recovery on this action.

In that regard, the facts remain straightforward regarding Lehman's initially filed lawsuit.  Lehman alleged, in a complaint filed September 27, 2010, that it had contracted to purchase loans from BanCorp in 2004, that the agreement included the representations and warranties identified above, and that BanCorp breached those representations and warranties.  *See* Request for Judicial Notice, Exhibit A, ¶¶ 8-11.

1   The 2010 Complaint sought recovery for breach of contract, breach of express

2   warranty, indemnity, and specific performance.  *Id.,* First through Fourth Claims for

3   Relief.  The basic gist of the lawsuit was simple: BanCorp sold loans to Lehman,

4   and those loans were defective in ways conflicting with the representations and

5   warranties in the LPAs.  That included, among other things, loans where the

6   borrower failed to make payments, and other infirmities that, according to Lehman,

7   constituted breaches of the LPAs.  The 2010 Complaint also alleged that these

8   asserted problems with the transacted loans violated the Seller's Guide, and

9   Lehman's rights under that instrument.  *Id.,* ¶¶ 15-18.  Lehman finally contended

10  that BanCorp had later entered into an indemnity agreement concerning certain

11  loans specifically, under which it agreed to indemnify Lehman for any losses

12  attendant to those loans.  *Id.,* ¶¶ 13-14.

13      BanCorp contested those allegations, but judgment was ultimately entered in

14  favor of Lehman in the amount of $1,900,000.  While that judgment, entered in

15  2013, coincided with BanCorp engaging in an organized and transparent winding

16  down of its business, it in no way served as an impetus or catalyst.  More

17  particularly, BanCorp began a series of transactions, with various third parties, to

18  sell its assets.  There was nothing sinister or surreptitious about the process –

19  BanCorp was clear and open about what was transpiring, and each of the business

20  transactions and settlements into which it eventually entered were legitimate, arm's

21  length sales with third parties, or Court authorized settlements, including the

22  disputed sale of lMSRs to PMAC. – transactions which were overseen, authorized,

23  and approved by the Government Sponsored Enterprise, Fannie Mae.[1]

24  _____

25  [1]  Although these facts – concerning PMAC – are not directly related to the basis
    on which Bancorp brings this Motion, we believe some context is important given

26  the nature of Lehman's allegations.  Specifically, Lehman alleges that PMAC is a

27  successor in liability to Bancorp as a result of a series of what the Complaint
    effectively alleges were fraudulent transfers.  *See* Complaint [Doc.1], ¶¶41-52.  In

28  (Continued…)

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

### B.      The PMAC Transaction

The PMAC transaction, which Lehman labors to paint in a fraudulent light, was a straightforward commercial transaction where PMAC paid millions of dollars and other consideration for the right to service two pools of residential mortgage loans, undisputedly owned by Fannie Mae.  The details make this innocuous conclusion clear:

- In December 2010, PMAC purchased the Master Servicing Rights to a pool of approximately 1,000 Fannie Mae owned loans for approximately $1.8 million in cash.

- In June 2011 and continuing in four installments through early 2013, PMAC purchased the Master Servicing Rights to a pool of approximately 9,000 Fannie Mae owned loans, structured into the four sub-pools, at the suggestion of Fannie Mae, for approximately $11.8 million in cash and other consideration.

The import of these particulars is unmistakable.  PMAC paid nearly $15 million in cash payments, plus other valuable consideration to BanCorp and acquired the Master Servicing Rights to the underlying Fannie Mae loans, an amount that constitutes significant and fair value for the purchased assets.[2]  Nor was

---

(…Continued)

light of that contention, Bancorp believes it is important to set forth the facts concerning the PMAC-Bancorp transactions, and in the process disabuse the Court of any notion that they were improper in any respect.

[2]    We note that the rights were sold as "non-recourse," a designation that materially reduced their value, for obvious reasons.  That fact is important because Lehman apparently contends that PMAC bought the rights at a steep discount, and thus paid less than equivalent value.  The purchase price itself – nearly $13 million – lays waste to that contention.  But the context of the transaction, where non-recourse rights were being acquired – is relevant and significant, because it affected the purchase price considerably.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    BanCorp insolvent in the wake of the transaction.  To the contrary, BanCorp's

2    balance sheet demonstrates that the company had substantial cash assets after the

3    transaction closed – it had, after all, just sold some of its Master Servicing Rights, a

4    Long Term Asset in exchange for almost $15 million.

5         The Company was, at the time, publically changing its business paradigm

6    (before later winding its operations down), and these transactions furthered that

7    intended transition.[3]  The same expected transformation entailed an accompanying

8    reduction in Bancorp's large sales workforce and some administrative and clerical

9    employees, all of whom eventually left for other employment.  Lehman contends

10   that the referenced MSR sales were concurrent with or accompanied by "nearly all"

11   of BanCorp's key employees migrating to PMAC.  *See* Complaint [Docket 1], ¶ 48.

12   The facts bely that assertion.  Indeed, while 37-42 BanCorp employees did find their

13   way to PMAC, comprising only about 30% of the BanCorp workforce – hardly a

14

15   [3]   As a result of and in the wake of the financial crises of 2008, many midlevel
     Mortgage Banks, such as BanCorp, and some of the largest financial institutions in
16   America, were forced out of business. As a matter of fact, just last week was the
     seven year anniversary of Lehman's Bankruptcy filing (Sep 14, 2008).  At this
17   critical time, BanCorp analyzed and assessed its prospects and options, and rather
     than file for Bankruptcy, elected to resolve its challenges, and continue.  But this
18   resolution necessarily involved converting Bancorp into a much leaner and more
     nimble company.  Therefore, BanCorp (which had already had reasonable layoffs in
19   2007 and early 2008, as a result of the financial crises, which really started in
     February 2007) elected to systematically reduce its workforce, and evolve into a
20   bulk transaction correspondent Bank, rather than a single loan transactional
     Mortgage Bank.  BanCorp continued to follow this change in business model, and
21   from that time in late 2008 through 2012, significantly reduced its workforce and
     client list.  During this same period, BanCorp also litigated and ultimately
22   successfully settled numerous other similar lawsuits, of significantly greater
     exposure and liability than Lehman, including those with IMPAC Funding,
23
     Countrywide / Bank of America,  CitiBank Mortgage, Inc, JP Morgan Chase Bank,
24   Aurora Bank (Lehman's own subsidiary) Bear Stearns, Morgan Stanley, Greenwich
     Capital / NORMURA, and numerous borrower lawsuits.
25

26

27

28

1   mass migration.  And there is no evidence those employees moved for any reason

2   other than an effort to find new employment as BanCorp's operational model

3   changed.  While it is true that some BanCorp officers ultimately moved to PMAC,

4   that fact likewise does nothing to demonstrate that the financial transaction between

5   BanCorp and PMAC were anything other than a legitimate arm's length commercial

6   engagements.  Most notably, BanCorp was an independent Mortgage Bank that had

7   been in operation for fifteen years prior to the sale, and PMAC was a large,

8   independent Mortgage Brokerage, which maintained no affiliation or business

9   relationship with BanCorp.  Accordingly, the mere fact that some BanCorp officers

10  and employees opted to cast their lot with PMAC, as BanCorp' was evolving, is

11  likewise an inconsequential fact for purposes of the authenticity of the underlying

12  transaction.  BanCorp sold some assets, and PMAC paid millions of dollars for

13  those assets.  BanCorp was both liquid and solvent after the transaction concluded.

14  It is that simple, and the evidence support no contrary conclusion

15      **C.    Lehman Pursues A Second Lawsuit**

16          Over the past year, Lehman's efforts concerning the BanCorp judgment have

17  become more aggressive.  It determined, at some point, that PMAC should be

18  targeted because of the asset sale described above and, presumably, the movement

19  of some BanCorp employees to PMAC in the months and years after the transaction.

20  Armed with those pedestrian facts, Lehman alleged that the sales transactions

21  constituted fraudulent transfers, and/or that PMAC was an alter ego of BanCorp.

22  These allegations are false, as a cursory review of the facts would promptly reveal.

23  But Lehman nevertheless launched a full court discovery blitz against PMAC and

24  BanCorp, under FRCP Rule 69 – permitting discovery in the context of judgment

25  enforcement.  And there have been no limits to Lehman's aggression in seeking this

26  discovery – it has demanded widespread depositions and document productions, all

27  under the guise of establishing that PMAC is somehow answerable for the 2013

28  judgment obtained against BanCorp.  The scope of these efforts is excessive and

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   abusive, and contravenes the privacy rights of myriad former BanCorp employees,

2   all of which has led to law and motion before Magistrate Judge Walsh.

3       Alas, Lehman did not stop at overbroad and oppressive discovery.  On June

4   26, 2015, it filed this lawsuit, against both BanCorp and PMAC, claiming

5   contractual indemnity rights arising out of ***the same loan transactions that served***

6   ***as the basis for its first lawsuit against BanCorp in 2010.***  The precise details are

7   uncertain, because the present Complaint is a masterpiece of conscious ambiguity

8   and obfuscation.  But the essential narrative, as Lehman contends, is that: (1)

9   Lehman bought mortgage loans from BanCorp (the dates of the transactions are not

10   alleged, but it's clearly the same transactions alleged in the 2010 Complaint); (2) the

11   loan transactions incorporated the Seller's Guide (just as in the first Complaint), and

12   that includes third party indemnity rights in favor of entities such as Lehman; (3)

13   BanCorp made the same representations and warranties concerning the transacted

14   loans as were alleged in the 2010 lawsuit (including the vow that no information

15   furnished to the purchaser was false, that the seller complied with all laws and

16   regulations concerning the loans, all statements to underwriters were true, there no

17   default breaches concerning the loans, the loans were originated in accordance with

18   the Seller's guide and the mortgaged properties were lawfully occupied); (4) those

19   representations and warranties were breached, in fundamentally the same manner as

20   asserted in 2010 (information provided in the loan files was allegedly false, for

21   example, and other infirmities); (5) certain government sponsored entities (such as

22   Fannie Mae and Freddie Mac), to whom Lehman had sold the loans, demanded

23   compensation or loan repurchase from Lehman after discovering the defects in the

24   loans, and that Lehman eventually settled with the agencies in 2014; and (6)

25   BanCorp must indemnify Lehman concerning the settlement amounts reached with

26   the GSE's.  *See* Complaint [Docket 1], ¶¶ 26-28, and 33-38.

27       This Complaint is, however, most notable for what it does not allege – namely

28   the specific agreements which Lehman contends were breached and which it seeks

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  to vindicate, the loans in issue and how this claim differs in any material way from

2  the litigation filed in 2010.  Those uncertainties are plainly a product of design.

3  Lehman understands it is re-litigating the same agreements, and the same alleged

4  breaches, that formed the basis of its prior lawsuit, and it clearly understands the

5  implications of that repetitive pursuit.  That is, this minimally constitutes a splitting

6  of Lehman's cause of action – under the primary right theory – and the case must be

7  dismissed on that basis alone.  But there is more.  That excessive delay is

8  inexplicable, made more so by the fact that Lehman ***did not notify BanCorp or***

9  ***otherwise demand indemnity at any time prior to the consummation of the***

10  ***settlements with the GSEs.***  In other words, Lehman sat on its rights *for years* and,

11  in the process, denied BanCorp the right to participate in the negotiation of

12  settlements concerning the very obligations for which Lehman now wants BanCorp

13  to answer.  That failure gives rise to an obvious laches defense, and to a cross-

14  complaint for breach of the covenant of good faith and fair dealing.[4]

15      It is, as mentioned, difficult to decipher the Complaint at first blush.  But it is

16  clear on its face that this lawsuit is based on the same agreements, and the same

17  purported breaches, that gave rise to the 2010 litigation and which purportedly

18  supported the judgment entered against Bancorp in 2013.  Thus, Lehman has re-

19  launched the same litigation against the same defendant, two years ***after securing***

20  ***judgment on the first case.***  The matter is *res judicata* as between Lehman and

21  Bancorp, and must therefore be dismissed.

22  / / /

23

24  _____

25  [4]   BanCorp, under the doctrine of contractual good faith and fair dealing, had the

26  right to be notified of the GSEs' claims against Lehman, and Lehman's concomitant
   claim for indemnification, so that it could participate in the settlement negotiations

27  and thus have a voice in determining the quantum of liability Lehman demands it

28  satisfy.

## III.   <u>THE STANDARDS FOR RULE 12(B)(6)</u>

To survive a motion to dismiss, a party asserting a claim in relief must provide sufficient facts that, if "accepted as true, . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, (2007)).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly,* 550 U.S. at 557.

Under Federal Rule of Civil Procedure 8, a complaint must make a "showing" that the plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief.  *Id.* at 555, n.3.  Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Indeed, while properly pleaded *facts* are considered true for purposes of a Motion to Dismiss, legal conclusions are to be disregarded under Rule 12(b)(6).  *See e.g., Lopez v. Professional Collection Consultants,* 2011 WL 4964886, at * 2 (C.D. Cal. 2011), citing *Twombly*.  Applying these standards here, SFI's Complaint cannot survive.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## IV.    ARGUMENT

### A.    This Lawsuit Is Barres As *Res Judicata* Between Lehman And Bancorp

This lawsuit suffers from multiple, independent problems.  But the notable and fatal infirmity is that, as noted, Lehman is asserting rights that have already been adjudicated between the parties during the first litigation.  And that repetition of duplicative claims constitutes Lehman splitting its cause of action.  Indeed, the law is well settled that a single claim cannot be divided and made the basis for several lawsuits.  *See e.g., Owl Drug Co. v. Bryant,* 115 Cal.App.2d 296, 303 (1953) ("A plaintiff must recover in one action all he is entitled to; if dissatisfied with the result, he cannot bring a new suit to recover something more on the same cause of action.' 34 C.J. p. 822, 50 C.J.S., Judgments, § 657. 'Where a demand or right of action is in its nature entire and indivisible it cannot be split up into several causes of action and sued piecemeal; but a recovery for one part will bar a subsequent action for the whole, the residue or another part.' 34 C.J., p. 827, 50 C.J.S., Judgments, § 661. 'This is the necessary result of the application of the well-settled principle that an entire claim, arising either upon a contract or from a wrong, cannot be divided and made the subject of several suits.')[5]

---

[5]    Claim splitting and claim preclusion are matters of California public policy, and thus California law must govern their disposition irrespective of any choice of law provisions in the LPAs.  *See e.g., Wulfjen v. Dolton,* 24 Cal.2d 891, 894-895 (1944) ("The rule against splitting a cause of action is based upon two reasons: (1) That the defendant should be protected against vexatious litigation; and (2) that it is ***against public policy*** to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action."); *see also Sych v. Ins. Co. of N. Am.*, 173 Cal. App. 3d 321, 328, (Ct. App. 1985) ("The doctrine of res judicata represents ***strong public policy*** promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and providing repose by preventing a person from
(Continued…)

The California Supreme Court has adopted and affirmed the principle against splitting causes of action, as a means of: (1) sparing the defendant from vexatious litigation; and (2) preserving the public policy of prohibiting the time and resources of the Courts from being consumed by matters already adjudicated.  *See Wolfjen v. Dolten,* 24 Cal.2d 891, 894-895 (1944).  In applying these principles, the Courts – both California Courts and their Federal counterparts sitting in diversity – have emphasized that this doctrine is one of substance, not form.  Accordingly, the law is unconcerrned with the identity of the specific relief being sought in consecutive cases, but rather the substantive right the plaintiff seeks to vindicate.  The Ninth Circuit, applying California law, explained this "primary right" theory, and its implications for claim preclusion:

> By contrast, California's doctrine of claim preclusion does not require identity in relief sought. "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory *or for different relief.*"
>
> …
>
> Under California's doctrine of claim preclusion, 'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.'  [Citations omitted.]  As opposed to the 'federal 'transactional' theory of claim preclusion,  'California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes.'
>
> A 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.' Crowley v. Katleman, 8 Cal.4th 666, 34 Cal.Rptr.2d 386, 881 P.2d 1083, 1090 (1994). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant

---

(…Continued)

being harassed by vexatious litigation"); *and see Armed Forces Commc'ns, Inc. v. Cass Commc'ns, Inc.*, 60 F.3d 832 (9th Cir. 1995) ("Under California law, a court cannot give force to a choice of law provision if the contract includes clauses that 'violate a strong California public policy.'")  (Emphasis added.)  Thus, California law must determine questions of claim splitting, even if the Lehman-Bancorp agreement maintains a foreign choice of law provision, as it does.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 197 Cal.Rptr. 612, 614 (1983). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." Id. (emphasis added). "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 108 Cal.Rptr.3d 806, 230 P.3d 342, 348 (2010).'

*Gonzales v. California Dep't of Corr.*, 739 F.3d 1226, 1232-33 (9th Cir. 2014); *see also Trujillo v. Santa Clara County* 775 F.2d 1359, 1366 (9th Cir. 1985) ("In California, *res judicata* precludes a plaintiff from litigating a claim if: the claim relates to the same "primary right" as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party in the prior action."

Those principles obtain here, and must result in dismissal of the lawsuit on *res judicata* grounds.  Lehman, for all the intellectual gymnastics in the most recent Complaint – all aimed at ensuring the BanCorp could not determine which contracts and which breaches were being alleged – is clearly seeking recovery for the same breaches and on the same agreements as the first lawsuit.  There is in fact no escaping that conclusion.  BanCorp only entered into a single basic loan purchase agreement with Lehman, and thus the same transactional contract is plainly at issue in both lawsuits.  Likewise, the breaches are essentially identical and, even by Lehman's contention, would have or did occur at the same time.[6]

/ / /

---

[6]   The second lawsuit alleges that the GSEs filed proofs of claim in the Lehman bankruptcy matter.  BanCorp is informed that those proofs of claim were filed *before* Lehman initiated the first lawsuit in 2010, further confirming that the purported breaches that underlie the second lawsuit had already occurred, and could have and should have been included in the first action.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Accordingly, the fundamental claims – or primary right – Lehman seeks to

2  vindicate in the second litigation have already been adjudicated in the first action,

3  and reduced to judgment.  That is, the right to be free of a breach of the LPA

4  between Lehman and Bancorp, concerning the representations and warranties in that

5  agreement.  Having pursued its claims on that right to conclusion, the matter is now

6  *res judicata,* and the second action is therefore barred.  There is no other appropriate

7  result.

8  ### B.    The Indemnity Claim Is Barred By The Statute Of Limitations

9  Lehman's claim for relief against Bancorp is also prohibited by the statute of

10  limitations and/or laches.  Lehman is suing under agreements that identify New

11  York choice of law.  New York maintains a six year statute of limitations for breach

12  of written contract.  N.Y. CPLR LAW § 213(2).  And a cause of action in New York

13  accrues at the time of the breach.  *See Ely-Cruikshank Co. v. Bank of Montreal*, 615

14  N.E.2d 985, 986 (N.Y. 1993).  In our case, BanCorp only sold loans to Lehman

15  before Lehman's 2008 bankruptcy, and none after.  Indeed, that fact is clear on the

16  face of the Complaint.  *See* Complaint, ¶¶ 9-10.[7]  Thus, at the absolute latest,

17  Lehman had to file its claim on the second action no later than 2014.  It waited until

18  2015, and the lawsuit is thus barred by the statute of limitation under New York law.

19  That said, Delaware law, with a three-year statute of limitations for breach of

20  contract, arguably governs these claims.  New York law provides that a breach of

21  contract claim must be filed in accordance with New York limitations law and the

22  law where the cause of action accrued.  *Global Fin. Corp. v. Triarc Corp*., 715

23  N.E.2d 482, 484 (N.Y. 1999).  Where the plaintiff is a corporation, the cause of

24  action accrues in the company's state of incorporation or its principal place of

25  ───────────

26  [7]   Lehman alleges Bancorp entered into the LPA with Lehman Brothers Bank (¶ 9),

27  its predecessor, and that LBB petitioned for Bankruptcy protection on September
15, 2008 (¶ 10).

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  business. *Oxbow Calcining USA Inc. v. American Indus. Partners*, 948 N.Y.S.2d 24,

2  30 (N.Y. App. Div. 2012).  Here, the underlying Lehman entity – Lehman Brothers

3  Bank, the entity that filed bankruptcy – had its principal place of business in

4  Delaware.  And since Lehman Brothers Holdings, the plaintiff here, is merely a

5  successor of Lehman Brothers Bank, that means Delaware, with its shorter

6  limitations period, controls.  Although the lawsuit is barred under both New York

7  and Delaware law, it's worth noting that Delaware law is likely to control.  And the

8  statute of limitations has plainly run under Delaware law.

9       Either way, Lehman's claims must be dismissed.  Those claims are based

10  upon the underlying alleged misrepresentations of the information in the loan files,

11  and therefore accrues at the time of sale, which had to be prior to Lehman Brothers

12  Bank's bankruptcy petition in September 2008 – there is no allegation that Bancorp

13  transacted any business with Lehman after Lehman filed for bankruptcy in

14  September 2008.  Lehman therefore only had until 2011 under Delaware law, and

15  2014 under New York Law to file this lawsuit.  Lehman did not file until June 26,

16  2015; its claims are therefore time barred.

17       **C.**    **The Lawsuit Is Also Barred By Laches**

18       If Lehman's claim for relief is not barred by the statute of limitations, the

19  doctrine of laches demands the same result.  Lehman had, literally, years, to bring

20  these claims to BanCorp's attention, and failed and refused to do so.  And the

21  refusal to bring the claims, or notify BanCorp, has resulted in real prejudice –

22  BanCorp is now being forced to defend a stale lawsuit, and was denied the right to

23  participate in the negotiation of the settlements with the GSEs.  Under these

24  circumstances, Lehman cannot be permitted to pursue these claims, given the

25  unwarranted and unjustified delay.  Laches prohibits it.  *See Kleinclaus v. Dutard*

26  147 Cal. 245, 249 (1905) ("In other words, the question is addressed to the sound

27  discretion of the chancellor in each case.' Where the lapse of time in the assertion of

28  the claim and the enforcement thereof, taken in connection with the circumstances

1  disclosed, is such as to show inexcusable delay on the part of the claimant,

2  considerations of public policy and the difficulty of doing entire justice obtain, and

3  are often sufficient to warrant a court of equity in declining, upon the ground of

4  laches, to commence an investigation").

5  **V.**     **CONCLUSION**

6      For the foregoing reasons, defendant PMC Bancorp respectfully requests that

7  the Complaint against it be dismissed in its entirety.

8

9  DATED: October 9, 2015                FREEMAN, FREEMAN & SMILEY, LLP

10

11

12                                       By:  _____/s/ Todd M. Lander_____

13                                            TODD M. LANDER
                                              Attorneys for PMC BANCORP, f/k/a
14                                            PROFESSIONAL MORTGAGE CORP.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100